## TERRE HAUTE BREWING COMPANY *v.* WARD.

[No. 8,039. Filed June 24, 1913. Rehearing denied April 29, 1914.]

1. INTOXICATING LIQUORS.—*Unlawful Sales.—Joint Tortfeasors.—Civil Liability.*—The sale of intoxicating liquor in violation of law is an illegal business, and persons jointly engaged in such an enterprise are jointly and severally liable under §8355 Burns 1908, §5323 R. S. 1881, for injury resulting from such unlawful sales. p. 159.

156    APPELLATE COURT OF INDIANA,

Terre Haute Brew. Co. *v.* Ward—56 Ind. App. 155.

2.  APPEAL.—*Waiver of Error.—Briefs.*—Specifications in a motion
to make specific, the overruling of which is urged as error, are
waived by appellant's failure to argue them in its brief.   p. 160.
3.  INTOXICATING LIQUORS.—*Unlawful Sales.—Action for Damages.
—Complaint.—Motion to Make Specific.*—In an action for dam-
ages from an unlawful sale of intoxicating liquors, where the
complaint charged that defendant brewing company procured a
license in the name of one of its employes, that such employe and
brewing company together paid the license fee, that the
licensee's bond was signed by an agent of the brewing company,
described the manner and time of the alleged unlawful sale, and
alleged that the brewing company shared in the profits, the over-
ruling of a motion to make it more specific as to the manner in
which the brewing company connived and colluded in the conduct
of the saloon business, and how it was interested in the profits,
was not error, especially in view of the fact that such matters
were peculiarly in defendant's knowledge.   p. 160.
4.  APPEAL.—*Review.—Overruling Motion to Make Specific.*—While
the granting or refusing of a motion to make a complaint more
specific is not wholly a matter of discretion, a reversal will not
follow because of such a ruling except in a case where it appears
that the rights of the complaining party have suffered.   p. 161.
5.  APPEAL.—*Review.—Presumptions.*—On objection that the court
erred in ordering a *nunc pro tunc* entry on the ground that there
was no entry or memorandum found among the records of the
case justifying the order, it will be presumed in the absence of
the evidence on which the order was based, that it was properly
made.   p. 162.
6.  ATTORNEY AND CLIENT.—*Authority of Attorney.—Conduct of Liti-
gation.—Change of Venue.*—An attorney in conducting an action
has implied authority to bind his client by stipulations    and
agreements relative to procedure, and may bind it by an agree-
ment not to take a change of venue upon the consideration that
the other party agrees to a continuance.   p. 162.
7.  VENUE.—*Change of Venue.—Waiver of Right.*—The right to a
change of venue is one which the litigant may waive, and a fail-
ure to take the steps to procure such change will be deemed a
waiver of the right.   p. 163.
8.  CONTRACTS.—*Surrender of Statutory Right.—Right to Change
of Venue.*—The rule that public policy prohibits a man to bind
himself by a contract not to assert a statutory right, has refer-
ence to the surrender of rights of such character as to affect the
public welfare, and does not prohibit the surrender of a right
purely personal, hence a contract not to take a change of venue
made in consideration that the other party agree to a continuance,

being the surrender of a purely personal right, is not void as against public policy. p. 164.

9. INTOXICATING LIQUORS.—*Unlawful Sales.—Action for Damages. —Evidence.—Sufficiency.*—In an action for damages resulting from an unlawful sale of intoxicating liquors, in which a brewing company was joined as a defendant with the licensee and the operator of the saloon, evidence showing that the company was instrumental in procuring the license, that the saloon was not personally conducted by the licensee, but by different persons placed in charge with the approval of the company's agent, that its beer was handled exclusively, that it advanced the money for license fees which was repaid by the person in charge at the rate of one dollar for each day the saloon was operated, including Sunday, that the saloon building was on land formerly owned by the company, but later held in the name of a realty company in which the brewery officers were officers, that the fixtures were owned by the brewing company, and that such company's agent had full knowledge of the manner in which the saloon was conducted, that it was conducted in violation of law, and that no rent was paid for the saloon, was sufficient to warrant a finding that the brewing company was interested in maintaining the saloon and to sustain the verdict as against it. pp. 164, 167, 169.

10. APPEAL.—*Evidence.—Verdict.*—In considering the sufficiency of the evidence to sustain the verdict, the court on appeal can not weigh conflicting evidence, but can consider only such evidence as supports the verdict. p. 166.

11. APPEAL.—*Review.—Instructions.—Error Cured by Other Instructions.*—In an action for damages from the unlawful sale of intoxicating liquor, instructions objected to on the ground that plaintiff's right of recovery was not therein confined to the particular violations of law charged in the complaint, were not fatally defective when considered in connection with other instructions telling the jury that it was necessary for plaintiff to prove that the sale of liquor was made to her husband at a time when he was intoxicated. p. 166.

12. INTOXICATING LIQUORS.— *Unlawful Sales.— Action for Damages.—Instructions.—Harmless Error.*—In an action for damages from the alleged sale of intoxicating liquors to a person at the time in a state of intoxication, though it is essential that the seller should have had knowledge of the purchaser's intoxication in order to render the sale unlawful, error in instructions informing the jury that a sale made to a person at the time intoxicated is unlawful, was harmless, where the person making the sale testified that he knew the purchaser was intoxicated. p. 166.

13. INTOXICATING LIQUORS.— *Unlawful Sales.— Action for Damages.—Instructions.—Measure of Damages.*—In an action for

damages from the unlawful sale of intoxicating liquor, instructions on the question of damages correctly stating the law in so far as they went, were not erroneous in failing to exclude a consideration of elements not proper to be considered, and defendant can not complain in the absence of a request or tender of an instruction cautioning the jury against the consideration of improper elements.  p. 167.

14. APPEAL.—*Review.*—*Instructions.*—That an instruction given is not to be commended is not of itself cause for reversal.  p. 167.

15. EVIDENCE.—*Weight and Sufficiency.*—*Proof.*—It is not necessary that every fact essential to a verdict should be established by direct evidence, since a fact may be said to be established when it can be rightly and reasonably inferred from other facts which are proved to the satisfaction of the jury.  p. 168.

16. APPEAL.—*Review.*—*Presumptions in Aid of Verdict.*—In order to sustain a verdict on appeal, the court will presume that the jury inferred essential facts that were properly inferable from the facts proved.  p. 169.

From Hancock Circuit Court; *Robert L. Mason*, Judge.

Action by Alta M. Ward against the Terre Haute Brewing Company and others.  From a judgment for plaintiff, the defendant named appeals.  *Affirmed.*

*Joseph E. Bell* and *John J. Kelly,* for appellant.

*L. Ert Slack, Morris W. Townley, Cook & Cook* and *Carl H. Weyl,* for appellee.

LAIRY, J.—Appellee brought this action against the Terre Haute Brewing Company, Claude D. Miller and David O'Donnell, to recover damages for the loss of the support of her husband, Charles Ward, resulting from the alleged illegal sale to him of intoxicating liquor.  David O'Donnell died during the pendency of the action and the suit abated as to him, but judgment was rendered against the other two defendants.

On Sunday, May 12, 1907, Charles Ward, appellee's husband entered a place at the northeast corner of Maryland and Davidson Streets in the city of Indianapolis, where intoxicating liquors were being sold in violation of law, by the defendant, Claude D. Miller.  Miller sold Ward two drinks while he was in a state of intoxication, and, shortly

after taking the last drink, Ward shot and killed one Thomas McIntire. As a result Ward was arrested on the charge of murder and was tried and convicted of that crime. He was sentenced to the State's prison for life where he was confined at the time of the commencement of this action, and the appellee was thereby deprived of his support.

On December 3, 1906, a license was granted to David O'Donnell who was named as a defendant, but he was not conducting the place on May 12, 1907. Miller was conducting the place on that date, and he testified at the trial that he was then the owner of the stock of liquors and cigars. This action is not based upon the bond given by O'Donnell at the time the license was granted, but it proceeds upon the theory that Miller was conducting a place where intoxicating liquors were sold in violation of law and that all persons so engaged, or who are either directly or indirectly interested in such a business are personally liable, under §8355 Burns 1908, §5323 R. S. 1881, to any person who shall sustain any injury or damage to his person or property or means of support on account of the intoxicating liquors so sold. The sale of intoxicating liquor in violation of

1. law is an illegal business, and this court has held that where two or more persons join in the prosecution of such an enterprise they become jointly and severally responsible under the section of the statute cited, for all injurious consequences resulting therefrom. *Terre Haute Brewing Co.* v. *Newland* (1904), 33 Ind. App. 544, 70 N. E. 190.

The complaint is in three paragraphs each of which avers that the defendant, Terre Haute Brewing Company colluded and connived and became a party in interest with the defendant David O'Donnell in the conduct of the business at the beginning of the same and became interested in the profits and proceeds of such business, and received a part of the profits for its aid and participation therein. Appellant filed a motion for an order requiring plaintiff to

160     APPELLATE COURT OF INDIANA,

Terre Haute Brew. Co. *v.* Ward—56 Ind. App. 155.

make her complaint more specific in the particulars following, to wit: "1. To specifically allege whether or not the said plaintiff was living with and cohabiting with the Charles Ward named in the complaint, as the wife of the said Charles Ward, upon the 12th day of May, 1907, the time that the said Charles Ward is alleged to have shot Thomas McIntire. 2. To state whether or not the said plaintiff continued to be the wife of the said Charles Ward from the said 12th day of May, 1907, until the commencement of this action. 3. To state in what manner the defendant, Terre Haute Brewing Company, colluded and connived with the defendant David O'Donnell, in the conduct of the saloon business described in the complaint. 4. To state in what manner the defendant Terre Haute Brewing Company, was interested in the profits and proceeds of the saloon business described in the complaint."

The action of the trial court in overruling this motion presents the first question for consideration. Appellant has waived the first two specifications of the motion by failing to argue them in its brief. As to the third and fourth specifications in the motion, it may be said that each paragraph of the complaint specifically alleges that the defendant O'Donnell applied for the license to conduct the saloon at the request of the Terre Haute Brewing Company, and that the company and one of its agents signed his bond. It is also alleged that appellant brewing company and O'Donnell paid to the treasurer of Marion County the fee required to obtain the license, and that the defendants David O'Donnell, Terre Haute Brewing Company and Claude D. Miller, unlawfully and in violation of law, kept the saloon open for the sale of intoxicating liquor, and sold intoxicating liquor therein on Sunday, May 12, 1907. The first paragraph alleges that on the day in question Claude D. Miller was acting as the agent and bartender of the defendants David O'Donnell and the Terre Haute Brewing Company; the second paragraph al-

leges that the defendant O'Donnell procured the license as the agent of the Terre Haute Brewing Company and that the defendant Miller was conducting the place as the agent of such brewing company; the third paragraph alleges that Miller ran the saloon in question without a license and that the defendant brewing company was interested with Miller in the profits. In view of these specific allegations we think that the court did not err in overruling the motion as to the third and fourth specifications. Whether appellant was interested in the conduct of the business in question, the facts were peculiarly within its knowledge and for this reason we can not reasonably suppose that it would be surprised by the evidence or otherwise harmed by reason of the lack of more specific averments in the complaint. While the granting or refusing of such motions are not wholly within the discretion of the trial court, still it is so far discretionary that a reversal will not follow except in a case where it appears that the rights of the complaining party have suffered. *Phoenix Ins. Co.* v. *Rowe* (1889), 117 Ind. 202, 20 N. E. 122; *Cincinnati, etc., R. Co.* v. *Miller* (1905), 36 Ind. App. 26, 72 N. E. 827, 73 N. E. 1001; *Pittsburgh, etc., R. Co.* v. *Ross* (1907), 169 Ind. 3, 80 N. E. 845.

Appellant filed an affidavit for a change of venue from Hancock County on the grounds that an odium was attached to the defendant and its cause of defense in that county, whereby it would be prevented from obtaining a fair and impartial trial. Pending this motion for a change of venue, the court upon the application and motion of the plaintiff ordered a *nunc pro tunc* entry to be made as of a previous term by which it appears that on the 31st day of the February term, 1910, of said court, the parties to the action appeared by their attorneys in open court and that the cause was continued with the agreement between the attorneys that no change of venue in the cause should be taken from the county. The court thereafter overruled appellant's mo-

tion for a change of venue upon the ground that the agreement not to take a change of venue was binding upon the parties. By statute an attorney has authority until discharged or suspended by another to bind his client in an action or special proceeding, by his agreement filed with the clerk or entered upon the minutes of the court and not otherwise. §1003 Burns 1914, §968 R. S. 1881. Appellant's first contention is that the court erred in ordering the *nunc pro tunc* entry to be made for the reason that there was no entry or memorandum found among the records of the case, required by law to be kept, upon which the court was justified in finding that the agreement in question was made and entered upon the minutes of the court at the previous term and that the clerk had failed to properly record it. There is no bill of exceptions in the record containing the evidence introduced in support of the order for the *nunc pro tunc* entry. In the absence of the evidence upon which the order was based, we must presume that it was properly made. *Berkey* v. *Rensberger* (1912), 49 Ind. App. 226, 96 N. E. 32; *Salem Bedford Stone Co.* v. *O'Brien* (1898), 150 Ind. 656, 49 N. E. 457; Elliott, App. Proc. §215.

In the next place it is asserted that even though the agreement in question was made between the attorneys of the parties in open court and entered upon the minutes of the court, it is not binding upon the parties for the reason that an attorney has no implied authority to bind his client by an agreement not to take a change of venue, and also for the further reason that such an agreement is against public policy and void. An attorney in conducting an action represents his client in the management of the case, and he has implied authority to bind him by stipulations and agreements relative to procedure. Such agreements affect the remedy merely and not the cause of action. *Whitestown Milling Co.* v. *Zahn* (1894), 9 Ind. App. 270, 36 N. E. 653; *Pike* v. *Emerson* (1831), 5 N. H. 393, 22 Am. Dec. 468; *Hill's Admr.* v. *Penn Mut. Ins. Co.* (1905),

NOVEMBER TERM, 1913.　　163

Terre Haute Brew. Co. *v.* Ward—56 Ind. App. 155.

120 Ky. 190, 85 S. W. 759; *Leahy* v. *Stone* (1904), 115 Ill. App. 138. In the case last cited it is held that an attorney has implied authority to bind his client by an agreement made in advance of the trial to the effect that the judgment should be final and that no appeal or writ of error to reverse the same should be presented. It has been repeatedly held that an attorney may bind his client by admissions made in the pleadings or at the trial, and that he may waive objections and do all other acts incident to the conduct of the action which he is employed to prosecute or defend. "The distinction between acts which an attorney has implied authority from his client to do and those which he has not such authority, seems to be, between an act collateral to, and one directly within the employment and duty of an attorney. 'The act of an attorney shall prejudice his master in the principal matter; for if he confesses the action without the consent and will of the master this shall bind his master; but otherwise in collateral matters.' 3 Viner's Abridgt. 304. 'An attorney being in court instead of his client or in his "place and turn", may make any disposition of the suit and any admission of facts which the party himself could make. 1 Salk. 86.' *Alton* v. *Gilmanton* [1823], 2 N. H. 520." *Meridian, etc., Light Co.* v. *Anderson* (1903), 111 Ill. App. 449. We entertain no doubt as to the authority of appellant's attorney to bind it by the agreement not to take a change of venue made upon the consideration that the other party would agree to a continuance. Having obtained a continuance by virtue of the agreement, appellant is not in a position to assert with very good grace, that his attorney had no authority to bind him by such agreement. *Ives* v. *Ives* (1894), 80 Hun 136, 29 N. Y. Supp. 1053. The right to a change of venue conferred upon a litigant by statute is one that may be waived, and a failure to take the proper steps to secure such change will be deemed a waiver of the right. *Smith* v. *Smith* (1852), 3 Ind. *303; *Luken* v. *Fickle* (1908),

42 Ind. App. 445, 84 N. E. 561; *Perdue* v. *Gill* (1905), 35 Ind. App. 99, 73 N. E. 844.

8. A contract waiving a right conferred by statute is not void, unless the statute conferring the right is based upon high motives of public policy. Greenhood, Public Policy 496. Some statutes confer rights which are in their nature not strictly personal to the individual in whose favor they exist, but which are of such a character as to affect the public welfare. Public policy is promoted in such cases by the individual asserting his right, and it is contravened by his failure to do so. It seems, therefore, that no man can bind himself by contract not to assert a right which is given by statute upon reasons of public policy. The rule thus announced has been applied to statutes providing for a right of exemption of certain property from sale on execution, to statutes giving a right of redemption after sale on execution, to statutes providing for payment of wages in cash, and to numerous other statutes of a similar character. However, the rule has no application to a statute which confers a right of a nature purely personal, such as the right under certain circumstances to take a change of venue. The motion for a change of venue was properly overruled.

Appellant asserts that the evidence is not sufficient to sustain the verdict. The court is of a different opinion. 9. There is evidence in the record from which the jury might infer and which would justify it in finding that appellant was instrumental in procuring a retail liquor license to be issued to David O'Donnell, who was employed by appellant about its stables, and that this license was renewed from time to time in his name; that O'Donnell did not at any time conduct the saloon in question, but that it was at all times conducted by persons placed in charge with the consent and approval of one of the agents of appellant; that no other draft beer was handled by those in charge except that manufactured by appel-

NOVEMBER TERM, 1913.     165

Terre Haute Brew. Co. *v.* Ward—56 Ind. App. 155.

lant; that appellant advanced the money to pay for the license and that the various persons in charge of the place paid it back at the rate of one dollar for each day it was operated including Sunday.  The evidence shows that the building for which the license was granted was located on lands formerly owned by the president of appellant company, but which together with other real estate similarly held, had been conveyed to the Wabash Realty and Loan Company, which company had the same president and, with the exception of one member, the same board of directors as the Terre Haute Brewing Company.  One witness testified that appellant's agent told him that the fixtures were owned by the brewing company, but another witness testified that he sold the fixtures to O'Donnell, retaining the title until paid for, and that after the tragedy he reclaimed them and moved them away.  The evidence tends to show that the agent of appellant had full knowledge of the manner in which the place was conducted during the time the license was held in the name of O'Donnell, and that it was conducted in open violation of law.  From the facts proved, the jury was warranted in inferring that appellant was interested in maintaining a place where its beer was sold at retail in order to provide a wholesale market for its product, and that it actually participated in providing the license and in furnishing the room where the business was conducted.  The evidence shows that the place was operated by six or seven different persons at various times while the license was held in the name of O'Donnell.  Five of these persons were produced as witnesses, and all of them except two testified that no rent was paid for the room.  McCann, who was the first to operate the saloon after the license was issued in the name of O'Donnell, testified that he paid one month's rent to appellant, and that thereafter no rent was called for or paid.  Miller who was operating the place at the time of the tragedy testified that he paid rent to the Wabash Realty and Loan Company, but the jury may not

have credited his testimony for the reason that he was flatly contradicted in another material part of his testimony by the witness Ludeman. It is true that the testimony of some of the witnesses for the defense shows that appellant was not connected in any way with the management or control of the place, but in considering the sufficiency of the evidence to sustain the verdict we can consider only such evidence as supports it, and cannot weigh conflicting evidence.

Appellant requested and tendered four instructions, all of which were given by the court. The court also gave twelve instructions requested by the appellee and twenty-two of its own motion. Appellant by its brief has presented numerous objections to the instructions given at the request of appellee and to those given by the court of its own motion. The second and third instructions given at the request of appellee are objected to upon the grounds that they do not confine the plaintiff's right of recovery to the particular violations of law charged in the complaint, but that they authorize a recovery upon proof of a sale in violation of any law regulating the sale of intoxicating liquors. Standing alone these instructions might be open to the objection urged but when they are considered in connection with the other instructions given, we do not think that they were misleading. By other instructions the jury was repeatedly told that it was necessary for plaintiff to prove that the sale of liquor was made to her husband at a time when he was intoxicated. Appellant objects to other instructions upon the ground that they inform the jury that it is unlawful to sell intoxicating liquors to a person who is at the time intoxicated These instructions do not accurately state the law, as it is necessary, in order to render such a sale unlawful, that the party making it should have knowledge of the intoxicated condition of the one to whom it is sold; but the error was harmless in this case for the reason that the man

who made the sale testified that he knew that plaintiff's husband was intoxicated at the time he made the sale in question.

Appellant objects to certain instructions given relating to the measure of damages. It is not contended that these instructions authorize the jury to consider any fact or element of damages in making their award which was not proper for their consideration, but it is asserted that the court should have gone further and excluded from the jury the consideration of grief, humiliation and sorrow of the plaintiff as well as the loss of her husband's society. The instruction was good as far as it went. It did not contain any statement from which the jury could have understood that these matters should be considered in awarding damages. If appellant desired that the jury be cautioned against the consideration of such matters, it should have tendered a proper instruction to that effect. If such an instruction had been requested the court would have doubtless given it. *Koerner* v. *Oberly* (1877), 56 Ind. 284, 26 Am. Rep. 34. Instruction No. 13 cannot be commended, but this court has held that the giving of such an instruction is not reversible error. *Cleveland, etc., R. Co.* v. *Jones* (1912), 51 Ind. App. 245, 99 N. E. 503.

From a consideration of the whole record the court is of the opinion that the case was fairly tried on its merits and that a correct result was reached. No substantial error was committed for which the judgment should be reversed. Judgment Affirmed.

## ON PETITION FOR REHEARING.

LAIRY, C. J.—On petition for rehearing we are asked to again consider the evidence and to hold that it is not sufficient to sustain the verdict. Appellant insists that there is a total want of evidence to sustain the verdict in two respects pointed out in its brief on rehearing.

Our attention is called to the allegations of each paragraph of the complaint in respect to the interest which appellant is charged to have had in the business of conducting the saloon in question, and it is first contended that there is no evidence to show that appellant had any such interest as the complaint alleges. It is first alleged in general terms that appellant was a party in interest with its agents, David O'Donnell and Claude D. Miller, in the conduct of the business. The first allegation on the subject is as follows: "And plaintiff would further say that the said defendant, the Terre Haute Brewing Company, colluded and connived and became a party in interest with its said agents, David O'Donnell and Claude D. Miller, in the conduct of said unlawful business at the beginning of same, as aforesaid." The second allegation on the subject is as follows: "And (it) became interested in the profits and proceeds of said business, and received all or a part of said profits for its aid and participation in said business." The first allegation could be established by evidence showing that appellant took an active part in procuring the license, selecting or approving the manager, furnishing the fixtures and providing a room free of rent in which such business was conducted, for the purpose of providing a market for the sale of its product at wholesale as stated in the original opinion.

The second part of the allegation with respect to the interest of the appellant, specifically charges that the brewing company was interested in the proceeds and profits of the business and received a part of the proceeds of the business. Fairly construed, this allegation means that appellant shared in the profits derived from retail sales made in conducting the business. As so construed there is no direct evidence to sustain this allegation, and the evidence offered by appellant, if believed by the jury, directly showed that it received no part of such profits. It is not necessary, however, that every fact should be established by direct evidence. A fact may be said to be

NOVEMBER TERM, 1913.     169

Terre Haute Brew. Co. v. Ward—56 Ind. App. 155.

established when it can be rightly and reasonably inferred from other facts which are proven to the satisfaction of the jury. If a secret arrangement existed between appellant and the various persons who operated this saloon whereby appellant was to share in the retail profits, it might be impossible to establish such fact by direct evidence, and yet the jury might have inferred such facts from other facts established by the evidence. If it were necessary to uphold the verdict in this case the court would indulge the presumption that the jury did infer such fact from the evidence and the court would be required to sustain the verdict on such inference unless it could say from an examination of the evidence in the record that such inference was so strained and improbable that it could not have been rightly and reasonably drawn by a jury composed of fair minded and reasonable men unaffected by bias or prejudice. We are not required to pass upon this question, as we think that the verdict can rest upon the first allegation as to interest heretofore set out, and that the evidence fairly sustains such allegation. The evidence shows that the saloon in question was operated by Claude D. Miller from August, 1906, until June, 1907, when it was closed. A license for the conduct of this saloon was issued in December, 1906, and the alleged illegal sale which forms the basis of this action occurred on May 12, 1907. It is the contention of appellant that there is absolutely no evidence to show that appellant had any interest in the saloon during the period which elapsed between December, 1906, and June, 1907, and that all of the evidence which could be considered as bearing upon the question of the interest of appellant in such business relates to the time prior to December, 1906. There is evidence from which the jury might properly find that Claude D. Miller took possession of the saloon in August, 1906, and that before he assumed the management he and the former manager went to see the agent of appel-

lant and obtained his consent to the change. At the time Miller assumed the management the license was in the name of O'Donnell and in December, 1906, a new license was taken out in the name of the same man. The evidence showed the manner in which the business had been conducted for some years before Miller assumed possession, and the jury had a right to assume that the same conditions continued and that the same relations existed between appellant and Miller as had existed between it and the former managers. It is true that the evidence of the witnesses Donnelly and Miller, if believed by the jury, would overcome any such inference which might arise from the other evidence, but the credibility of these witnesses and the weight of their testimony were questions solely for the consideration of the jury. It was for the jury to determine in the first instance what inference it would draw from the evidence; and, if it drew the inference that appellant was interested in conducting the saloon at the time of the alleged illegal sale of liquor, it was for the jury to say what weight should be given to such inference in the determination of the issue. As against this inference, it was the duty of the jury to consider and weigh all opposing evidence, and to determine on which side the preponderance lay. In doing this, however, it had a right to determine the credibility of all of the witnesses and to decide what weight it would give to each item of evidence. After weighing the evidence, the jury has decided the issue against appellant and it is quite clear that this court cannot disturb the verdict without weighing the evidence, and this it has no power to do.

Petition for rehearing overruled.

NOTE.—Reported in 102 N. E. 395; 105 N. E. 58. As to liability of liquor seller to wife of purchaser for loss through husband's condition resulting from the selling, see 85 Am. St. 452. On the question of criminal liability for violation of liquor law by partner, servant or agent, see 41 L. R. A. 661; 16 L. R. A. (N. S.) 786; 20 L. R. A. (N. S.) 321; 33 L. R. A. (N. S.) 419. As to the liability under a civil damage act of several persons contributing to intox-

ication, see 21 Ann. Cas. 394. See, also, under (1) 23 Cyc. 320; (2) 3 Cyc. 388; (3) 31 Cyc. 646; (4) 31 Cyc. 669; (5) 3 Cyc. 275; (6) 4 Cyc. 937; (7) 40 Cyc. 124; (8) 9 Cyc. 480; 40 Cyc. 124; (9) 23 Cyc. 324; (10) 3 Cyc. 348; (11) 38 Cyc. 1778; 23 Cyc. 331; (12, 14) 38 Cyc. 1809; (13) 38 Cyc. 1693; (15) 17 Cyc. 817; (16) 3 Cyc. 275.